IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KRISTY WAMSLEY, | ) | CASE NO. 5:18 CV 0269 |
| | ) | |
| Plaintiff, | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **REPORT &** |
| | ) | **RECOMMENDATION** |
| Defendant. | ) | |

## Introduction

Before me by referral[1] is an action for judicial review of the final decision of the Commissioner of Social Security denying the applications of the plaintiff, Kristy Wamsley, for disability insurance benefits and supplemental security income. The Commissioner has answered[2] and filed the transcript of the administrative record.[3] Under my initial[4] and procedural[5] orders, the parties have briefed their positions[6] and filed supplemental charts[7] and the fact sheet.[8] They have participated in oral argument.[9]

---

[1] This matter was referred to me under Local Rule 72.2 in a non-document order dated February 2, 2018.
[2] ECF No. 11.
[3] ECF No. 12.
[4] ECF No. 5.
[5] ECF No. 13.
[6] ECF No. 16 (Commissioner's brief); ECF No. 15 (Wamsley's brief).
[7] ECF No. 16, Attachment 1 (Commissioner's charts); ECF No. 15, Attachment 2 (Wamsley's charts).
[8] ECF No. 15, Attachment 1.
[9] ECF No. 18.

For the reasons set forth below, I recommend that the ALJ's finding of no disability be affirmed in part and reversed and remanded in part.

## Facts

**A.  Background facts and decision of the Administrative Law Judge ("ALJ")**

Wamsley, who was 39 years old at the time of the hearing,[10] has a twelfth grade education.[11]  Her past relevant work experience includes a receptionist, cashier, and bank teller.[12]

The Administrative Law Judge ("ALJ"), whose decision became the final decision of the Commissioner, found that Wamsley had severe impairments consisting of: bipolar disorder; major depressive disorder; lumbar and cervical degenerative disc disease; obesity; chronic pain disorder; irritable bowel syndrome; gastroesophageal reflux disease; anxiety disorder; somatoform disorder; and fibromyalgia.[13]

The ALJ found Wamsley had the residual functional capacity ("RFC") for sedentary work, as defined in the regulations, with additional limitations.[14]  The ALJ decided that this RFC precluded Wamsley from performing her past relevant work.[15]

---

[10] ECF No. 15, Attachment 1 at 1 (fact sheet).
[11] *Id.*
[12] *Id.*
[13] ECF No. 12, Transcript ("Tr.") at 13.
[14] *Id.* at 15.
[15] *Id.* at 21.

2

Based on the testimony of the vocational expert at the hearing, the ALJ determined that a significant number of jobs existed nationally that Wamsley could perform.[16] The ALJ, therefore, found Wamsley not under a disability.[17]

**B.     Issue on judicial review**

Wamsley asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Wamsley presents the following issue for judicial review:

- Whether the ALJ erred in evaluating Wamsley's mental impairments and fibromyalgia.

## Analysis

**A.     Applicable legal principles**

*1.     Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive. . . ." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is "'more than a mere scintilla. It means such relevant evidence

---

[16] *Id.*
[17] *Id.* at 22.

> as a reasonable mind might accept as adequate to support a conclusion.'"
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[18]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[19] The Court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[20]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

**B.    Application of legal principles**

Wamsley presents two distinct issues, one going to mental impairments and the other focusing on fibromyalgia. Although not necessarily apparent from the headings in the brief, the mental impairments issue is really a challenge to the findings at Step Three, the listings. The fibromyalgia issue is a Step Four challenge to the RFC. I reframe the issues as follows:

- The ALJ found that Wamsley did not meet or equal Listing sections 12.04, 12.06, or 12.07. The ALJ cited exclusively to an agency function report, even though the transcript included many records of her mental treatment and reports from treating

---

[18] *Buxton v. Halter*, 246 F.3d 762, 772-73 (6th Cir. 2001) (citations omitted).
[19] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06CV403, 2008 WL 399573, at *1 (S.D. Ohio Feb. 12, 2008).
[20] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

professionals. Given this limited and incomplete articulation, does substantial evidence support the ALJ's finding?

- The ALJ assigned the opinions of her treating physicians regarding the limiting effects of her fibromyalgia some but not controlling weight. In support, the ALJ cited inconsistency with the objective medical evidence. Is the ALJ's articulation based on objective medical evidence sufficient substantial evidence to support his finding as to weight of the treating physicians' opinions?

### 1.     *Listings 12.04, 12.06, and 12.07*

The ALJ did a poor job at Step Three in identifying the evidence supporting the findings. The ALJ cited only one piece of evidence, a functional report prepared by an agency employee based on an early interview of Wamsley. There is no question that this single report is not substantial evidence supporting the Step Three findings.[21] There is substantial medical evidence about the mental impairments at issue in the record, but the ALJ neither discussed nor cited any of it as part of the Step Three analysis, although he discusses much of this evidence elsewhere in his opinion.[22]

As the Commissioner's counsel pointed out, the ALJ's Step Three discussion included the statement that the ALJ "considered the opinion of the State Agency medical consultants who evaluated this issue at the initial and reconsideration levels of the administrative review process and reached the same conclusion . . . ."[23] In fact, two state agency reviewing sources opined that Wamsley did not meet or equal the listings at issue.[24] And as the ALJ observed, no treating or examining physician opined that Wamsley would

---

[21] Tr. at 296-301.
[22] *Id.* at 18-20.
[23] *Id.* at 14 (citations omitted).
[24] *Id.* at 78, 139-40.

5

meet or equal a listing.

There is no question that merely citing boilerplate regarding state agency source opinions and a single function report despite medical evidence on the impairments at issue in the record is a substandard effort by the ALJ.  But a state agency reviewing source's opinion *is* substantial evidence sufficient to support a Step Three finding.[25]  As Wamsley bears the burden of proof at Step Three,[26] and the articulation standards at Step Three are less stringent than those at Step Four,[27] there is enough here to affirm the Step Three finding.  Therefore, I recommend the ALJ's finding that Wamsley did not meet or medically equal a listing be affirmed.

*2.     Fibromyalgia*

As I described in a previous opinion fifteen years ago:

> Fibromyalgia is an "elusive" and "mysterious" disease.  It has no known cause and no known cure.  Its symptoms include severe musculoskeletal pain, stiffness, fatigue, and multiple acute tender spots at various fixed locations on the body.  The presence of these tender spots are the primary diagnostic indicator of the disease.  There is no laboratory test for the disease's presence or severity.  Physical examinations usually yield normal findings in terms of full range of motion, no joint

---

[25] *See Eiland v. Astrue*, No. 1:10CV2436, 2012 WL 359677, at *10 (N.D. Ohio Feb 2, 2012).

[26] *Id.* at *9 ("[I]t is the claimant's burden to bring forth evidence to establish that [her] impairment meets or is medically equivalent to a listed impairment.").

[27] Tr. at 15 ("The limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process.  The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment.")

>swelling, normal muscle strength, and normal neurological reactions.[28]

Because of the nature of fibromyalgia and its manifestations, application of the usual disability analysis is difficult. The seminal case on weighing treating physician opinions on fibromyalgia is *Rogers v. Commissioner*.[29] *Rogers* followed closely on the analytical framework I laid out in *Swain v. Commissioner*.[30] In both *Rogers* and *Swain*, the ALJs rejected the opinions of treating rheumatologists who had established the severity of fibromyalgia by tender point analyses and who had offered specific opinions regarding the limitations caused by that severity. In both cases, the ALJs rejected the opinions of the treating rheumatologists because those opinions did not have the support of objective medical evidence. As observed in *Rogers* and *Swain*, because of the nature of fibromyalgia, its diagnosis and the determination of the limitations caused thereby cannot be determined from objective medical evidence.[31] If a treating rheumatologist has conducted a proper analysis, his or her opinion should ordinarily be afforded controlling or great weight.[32]

An ALJ, in evaluating fibromyalgia as part of his or her disability analysis, must acknowledge that the "[p]rocess of diagnosing fibromyalgia includes (1) the testing of a series of focal points for tenderness and (2) the ruling out of other possible conditions

---

[28] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 990 (N.D. Ohio 2003) (internal citations omitted).
[29] 486 F.3d 234.
[30] *Swain*, 297 F. Supp. 2d 986.
[31] *Rogers*, 486 F.3d at 243-44; *Swain*, 297 F. Supp. 2d at 990.
[32] *Rogers*, 486 F.3d at 244-45; *Swain*, 297 F. Supp. 2d at 993.

through objective medical evidence."[33] That is not to say that a claimant diagnosed with fibromyalgia is *per se* disabled.[34] But an ALJ cannot discount medical opinions regarding a claimant's fibromyalgia on the grounds that such opinions are inconsistent with objective medical evidence.[35]

With respect to the opinions of treating physicians Laszlo and Sassano, the ALJ found as follows:

> While Dr. Laszlo and Dr. Sassano treated the claimant, their opinions are not entitled to controlling weight. The balance of the evidence confirms that the claimant was limited to sedentary work. However, there is little support for the need to change positions or the substantial sitting, standing, and walking restrictions that the physicians described. Indeed, the treatment notes show tenderness and spasms with impaired sensation at times, but she had normal strength, intact gait, and largely normal neurological functioning (56F). There [sic] findings are inconsistent with objective exams showing mild to at best moderate findings (55F/3l[,] 28F/27). The extreme limits are also not consistent with findings from other examining sources which often noted tenderness and decreased range of motion but found normal gait, tone, strength, sensation, coordination and other [sic] (55F/l, 5lF/2[,] 3F/3, 7F). Additiona1ly, she was able to engage in numerous daily activities (discussed above). Such facts are inconsistent with the findings of Dr. Sassano and Dr. Laszlo and thus their opinions are entitled to only some weight.[36]

---

[33] *See Rogers*, 486 F.3d at 244.
[34] *Stankoski v. Astrue*, 532 F. App'x 614, 619 (6th Cir. 2013) (citing *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 806 (6th Cir. 2008)).
[35] *Rogers*, 486 F.3d at 244-46; *Swain*, 297 F. Supp. 2d at 993-94.
[36] Tr. at 20.

8

In 2011, Dr. Jason Springer, a rheumatologist, diagnosed Wamsley with fibromyalgia.[37] An examination in 2013 by Dr. Mark Pellegrino, a pain and rehabilitation specialist, found 14 out of 18 tender points and affirmed the fibromyalgia diagnosis.[38] The treatment notes by Wamsley's various doctors are replete with references to tenderness and tender points.[39] But the ALJ glossed over Wamsley's tenderness – the hallmark of fibromyalgia – and focused on the "mild to moderate" findings in the objective medical evidence. The ALJ's dismissing or minimalizing Wamsley's fibromyalgia persists throughout his RFC analysis.[40] And this is not a case like *Vance v. Commissioner of Social Security* – which the Commissioner cited repeatedly as controlling during oral argument – where the claimant's fibromyalgia symptoms improved or remained stable.[41] Indeed, the record shows Wamsely underwent a series of treatments that provided little to no relief for her pain. In 2016, Dr. Henry Vucetic wrote: "I had a lengthy discussion about fibro treatment with [Wamsley] today. Over the last 5 years she has tried every conservative and invasive treatment for her Fibro and headache except for the Chronic Pain Rehab Program. She is willing to start at the beginning again."[42]

The Commissioner's counsel argues that the opinions at issue came very late in the relevant period and cannot be read to support limitations as of an earlier date. But the

---

[37] *Id.* at 713-16.
[38] *Id.* at 838-39.
[39] *See, e.g.*, Tr. at 409, 472-75, 1560-63, 1573-1585, 1701-12, 1737-58.
[40] *Id.* at 16-21.
[41] *Vance*, 260 F. App'x at 807 (distinguishing *Rogers*, 486 F.3d at 245).
[42] Tr. at 1706.

9

record contains evidence that Wamsley was diagnosed as having fibromyalgia in 2011 and was treated for it thereafter. The onset date can be determined on remand if the treating source opinions are given greater weight. The Commissioner's counsel also argues that the opinion of the treating rheumatologist identifies pain, not fibromyalgia, as the cause of the limitations. Counsel argues that this opinion can be discounted on the basis of objective medical evidence. This is a strained argument. The treating physician stated that Wamsley's limitations were caused by fibromyalgia and pain. He referred Wamsley to the rheumatologist for further evaluation. And as Wamsley's counsel argues, fibromyalgia manifests itself in pain. Furthermore, the ALJ made no mention of any of these points in discounting the treating doctors' opinions, and so the Commissioner's arguments constitute impermissible *post hoc* rationalization.

A word must be said about Wamsley's daily activities, which the ALJ identified as his final reason for discounting the opinions of Drs. Laszlo and Sassano. According to the ALJ, she watched television, went shopping, interacted with friends socially, handled her finances, prepared full meals, cared for her child, and performed household chores, including cleaning, washing dishes, and doing laundry.[43] "Yet these somewhat minimal daily functions are not comparable to typical work activities."[44] Moreover, the ALJ's description "mischaracterizes" Wamsley's testimony regarding the scope of her activities,

---

[43] *Id.* at 14-15.
[44] *Rogers*, 486 F.3d at 248.

10

and "fails to examine the physical effects coextensive with their performance."[45] As the ALJ acknowledged, she did not live alone – she lived with her father.[46] But as the ALJ failed to mention, she also lived with her 19 year old son,[47] who provided her with a lot of help.[48] Some days she was not even able to do dishes, and while she did laundry, her son carried the laundry up and down from the basement.[49] With respect to cooking, she testified that some days she can't even cook, and again her son helps her a lot.[50] And while she socializes on occasion, it's usually something quick because of her anxiety and/or pain.[51] As a result, the ALJ's reliance on Wamsley's daily activities to discount Drs. Laszlo's and Sassano's opinions also fails.

The ALJ's rejection of Drs. Laszlo's and Sassano's opinions violates the legal standards applicable for determining the weight to be given to treating physicians' opinions in fibromyalgia cases and lacks the support of substantial evidence. Therefore, I recommend this case be reversed and remanded on this ground for reconsideration of the opinions of Wamsley's treating physicians consistent with the law of this circuit.

---

[45] *Id.* at 248-49.
[46] Tr. at 14.
[47] *Id.* at 38.
[48] *Id.* at 49-50.
[49] *Id.*
[50] *Id.*
[51] *Id.* at 50

11

## Conclusion

Substantial evidence supports the ALJ's Step Three finding, but the ALJ's treatment of the opinion evidence as part of the RFC findings regarding Wamsley's fibromyalgia violates the principles set forth in Sixth Circuit precedent and therefore cannot stand. Accordingly, I recommend that the decision of the Commissioner denying Wamsley's disability insurance benefits and supplemental security income be affirmed in part and reversed and remanded in part.  On remand, the ALJ must properly consider the opinions of Drs. Laszlo and Sassano with respect to Wamsley's fibromyalgia consistent with the law of this circuit.

Dated: November 14, 2018                     s/ William H. Baughman, Jr.
                                             United States Magistrate Judge

## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice.   Failure to file objections within the specified time waives the right to appeal the District Court's order.[52]

---

[52] *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).   *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

13